UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>- against -<br><br>GEORGE WALLACE STEWART, ET AL.,<br><br>Defendants. | File No.<br><br>1:98-cv-02636-LAP |

**SECURITIES AND EXCHANGE COMMISSION'S RESPONSE IN OPPOSITION TO
PHYLLIS GOTTLIEB'S LETTER MOTION TO REOPEN ECF NO. 433 TO GRANT
<u>RECONSIDERATION OF THE RELEASE OF FUNDS TO THE COMMISSION</u>**

Dated: April 4, 2023
      Washington D.C.

Respectfully submitted,

<u>/s/ Christy J. White</u>
Christy J. White, pro hac vice
Securities and Exchange Commission
100 F Street NE, Mail Stop 5628
Washington, DC 20549
Tel: (202) 551-4502
Fax: (804) 708-6119
email: whitechr@sec.gov

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES…………………………………………………………………..ii

RELEVANT FACTS………………………………………………………...………………..1

ARGUMENT………………………………………………………………………....2

**A. Mrs. Gottlieb's Motion fails to satisfy the strict standard required to obtain the "extraordinary remedy" of reconsideration** …..………...………...……...….……...3

    i.    There are no grounds for reconsideration under which Mrs. Gottlieb's Motion can be granted…..………..………………………………………….….…….………...5

**B. The Court did not clearly err in deciding Mrs. Gottlieb's Renewed Motion and the SEC's Counter Motion on the papers** …..…………………………..……………..6

    i.    NY Civil Practice Law and Rule ("CPLR") 5225 does not require a jury trial in this matter.…………………………………………………………………….....7

    ii.    Mrs. Gottlieb has no Seventh Amendment right to a jury trial in this matter...............................………………………………………………....8

    iii.    Releasing half of the Proceeds without a "full evidentiary hearing" did not violate any due process rights under the Fifth Amendment............................................…10

**C. The Court did not clearly err in holding that Mrs. Gottlieb is a nominal owner of the Proceeds** …..……………………………………………………..…………....11

    i.    Mrs. Gottlieb offered no controlling case law or overlooked facts that would warrant reconsideration of the Court's decision to turn over at least half of the Proceeds to the Commission under the Cavanaugh Test.………………………..12

    ii.    Mrs. Gottlieb offered no controlling case law or overlooked facts that would warrant reconsideration of the Court's finding that Mr. Gottlieb is the equitable owner of the Proceeds……………………………………………………………15

**D. Mrs. Gottlieb's Declaration Adds No Support to Her Motion and Should Be Disregarded………………………………………………………………………17**

**CONCLUSION………………………………………………………………....18**

## <u>TABLE OF AUTHORITIES</u>

### Case Law

*Accolade Constr. Grp. Inc.*,
    2017 U.S. Dist. LEXIS 79228 (S.D.N.Y. 2017) ...................................................... 9

*Aczel v. Labonia*,
    584 F.3d 52 (2d Cir. 2009) ...................................................................................... 4

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
    684 F.3d 36 (2d Cir. 2012)......................................................................... 3-4, 6, 18

*Armstrong v. Manzo*,
    380 U.S. 545 (1965) ............................................................................................. 10

*CFTC v. Foreign Fund*,
    2008 U.S. Dist. LEXIS 10667 *3 (M.D. Tenn. 2008) ......................................... 12

*CFTC v. Walsh*,
    618 F.3d 218 (2d Cir. 2010) ........................................................................... 12-14

*Corsair Special Situations Fund, L.P v. Nat'l Res.*,
    595 F. App'x 40 (2d Cir. 2014) ..................................................................... 4, n.3

*Dixon v. Blackensee*,
    2019 U.S. Dist. LEXIS 97958 (S.D.N.Y. 2019) ................................................ 10

*First Small Business Inv. Corp. v. Zaretsky*.
    46 Misc. 2d 328 (N.Y. Sup. Ct. 1965) ................................................................. 8

*Granfinanciera, S.A. v. Nordberg*,
    492 U.S. 33  (1989) ................................................................................................ 9

*Humphreys v. New York City Health*,
    2023 U.S. Dist. LEXIS 5222 (S.D.N.Y. 2023) ........................................ 5-6, 8, 16

*In re BDC 56 LLC*,
    330 F.3d 111 (2d Cir. 2003) ................................................................................ 18

*In re Eur. Gov't Bonds Antitrust Litig.*,
    2022 U.S. Dist. LEXIS 107942 (S.D.N.Y. 1988) ....................................... 3-4, 7, 16

*In re Health Mgmt. Sys., Inc. Sec. Litig.*,
    113 F. Supp. 2d 613 (S.D.N.Y. 2000) ........................................................... 4, 18

*Maersk, Inc. v. Neewra, Inc.*,
    687 F. Supp. 2d 300 (S.D.N.Y. 2009) ................................................................ 9

*Marrero Pichardo v. Ashcroft*,
    374 F.3d 46 (2d Cir. 2004) .................................................................................. 18

*Martinez v. McAleenan,*
   385 F. Supp. 3d 349 (S.D.N.Y. 2019) ................................................................ 10

*Nakshin v. Holder,*
   360 F. App'x 192 (2d Cir. 2010) ................................................................ 4, 9, 11

*Procel v. United States Tr. (In re Procel),*
   467 B.R. 297 (S.D.N.Y. 2012) ................................................................ 6, 8

*Schwartz v. HSBC Bank USA, N.A.,*
   2017 U.S. Dist. LEXIS 94019 (S.D.N.Y. 2017) ................................................................ 3

*SEC v. Ahmed,*
   343 F. Supp. 3d 16 (D. Conn. 2018) ................................................................ 16

*SEC v. AIC, Inc.,*
   2013 U.S. Dist. LEXIS 130249 (E.D. Tenn. 2013) ................................................................ 12

*SEC v. Aragon Capital Advisors, LLC,*
   2001 U.S. Dist. LEXIS 82531 (S.D.N.Y. 2011) ................................................................ 17, n. 7

*SEC v. Ashbury Capital Partners, L.P.,*
   2001 U.S. Dist. LEXIS 7094 (S.D.N.Y. 2001) ................................................................ 3, 17

*SEC v. Byers,*
   2009 WL 33434 (S.D.N.Y. 2009) ................................................................ 13

*SEC v. Cavanagh,*
   155 F.3d 129 (2d Cir. 1998) ................................................................ 12-14

*SEC v. Colello,*
   139 F.3d 674 (9th Cir. 1998) ................................................................ 12

*SEC v. First Jersey Securities, Inc.,*
   101 F.3d 1450 (2d Cir. 1996) ................................................................ 9

*SEC v. McGinn, Smith & Co.,*
   98 F. Supp. 3d 506 (S.D.N.Y. 2015) ................................................................ 15

*SEC v. Rosenthal,*
   426 Fed. Appx. 1 (2d Cir. 2011) ................................................................ 12-13

*SEC v. Smith,*
   646 F. App'x 42 (2d Cir. 2016) ................................................................ 15

*Shrader v. CSX Transp., Inc.,*
   70 F.3d 255 (2d Cir. 1995) ................................................................ 4

*Soley v. Wasserman,*
   2013 U.S. Dist. LEXIS 55799 (S.D.N.Y. 2013) ................................................................ 9

iii

*United States v. Accolade Constr. Grp. Inc.*,
   2017 U.S. Dist. LEXIS 79228 (S.D.N.Y. 2017) ...................................................... 9

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
   956 F.2d 1245 (2d Cir. 1992) ............................................................................ 4-5

## U.S. Constitution, Statutes, and Other Sources

U.S. Const. Amend. V ................................................................................... 10

U.S. Const. Amend. VII .................................................................................. 9

15 U.S.C. § 77q ........................................................................................... 1

15 U.S.C. § 78j ........................................................................................... 1

17 C.F.R. § 240.10b-5 ................................................................................... 1

Local Civil Rule 6.3 .............................................................. 3, 7, 9, 16-17, 17 n. 4

NY Civil Practice Law Rule ("CPLR") 5225 ......................................................... 7-8

**SECURITIES AND EXCHANGE COMMISSION'S RESPONSE IN OPPOSITION TO
PHYLLIS GOTTLIEB'S LETTER MOTION TO REOPEN ECF NO. 433 TO GRANT
<u>RECONSIDERATION OF THE RELEASE OF FUNDS TO THE COMMISSION</u>**

The United States Securities and Exchange Commission ("Commission" or "SEC") respectfully submits its Response in Opposition to Phyllis Gottlieb's Letter Motion to Reopen ECF No. 433 to Grant Reconsideration of the Release of Funds to the Commission ("Motion"). (*See* ECF No. 440). Mrs. Gottlieb's Motion is an attempt to relitigate an issue, for which the Court's record is complete and voluminous, simply because she disagrees with the Court's findings. To obtain the extraordinary relief of reconsideration, however, the movant must do far more than merely disagree. As a result, Mrs. Gottlieb's Motion must be denied.

## I.  RELEVANT FACTS

On January 15, 2003, this Court entered its Judgment finding that Allen Gottlieb ("Mr. Gottlieb") violated the anti-fraud provisions of Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a), and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5 ("Judgment"). (ECF 85). The Judgment ordered Mr. Gottlieb to pay disgorgement and prejudgment interest totaling $2,005,443.54, which represented his gains from his fraudulent conduct. In addition, it imposed a civil penalty on him in the amount of $787,333 and injunctive relief. (ECF 85). In the nearly 18 years since the Court entered its Judgment, Mr. Gottlieb has made no voluntary payments as ordered by the Court.[1]

At issue in  Mrs. Gottlieb's present Motion is the true ownership of the excess proceeds ("Proceeds") from the sale of the Gottliebs' former home, located at 3234 NE 211 Terrace,

---

[1] Despite being found in contempt of the Court's order requiring him to pay disgorgement on October 5, 2021, Mr. Gottlieb continues to disregard this Court's order. (ECF No. 373). He still has not made one voluntary payment towards his Judgment.

Aventura, Florida 33180 ("Aventura Lakes Property" or "Property"). On July 20, 2015, the Aventura Lakes Property, which was then titled solely in the name of the Phyllis J. Gottlieb Living Trust ("Trust"), was sold to Lior and Dara Cohen (the "Cohens"). (*See* ECF No. 331-5). In aid of execution on the Judgment, the Commission served a restraining notice on the title company involved in the sales transaction, First American Title Insurance Company ("First American"). (ECF No. 160). Consequently, the excess sales proceeds ("Proceeds") were first held in escrow with First American, and later deposited in this Court's Registry. (ECF No. 290).

On April 13, 2021, Mrs. Gottlieb filed her Renewed Motion to Release Funds ("Renewed Motion"), which the Commission opposed. (ECF Nos. 319-25, 330-31).[2] On February 7, 2023, this Court granted the Commission's opposition and counter motion ("SEC Counter Motion") to the Renewed Motion, and ordered half of the Proceeds to be paid to the Commission, with further briefing due on the remaining amount. (ECF No. 433). Not being satisfied with the Court's decision, Mrs. Gottlieb filed the instant Motion to Reopen ECF No. 433 to Grant Reconsideration of the Release of Funds to the Commission. (*See* ECF Nos. 434-35, 437, 439-441).

## II. ARGUMENT

As the Commission has stated before, "[i]n this matter, all roads lead back to Mr. Gottlieb." (ECF No. 330, p. 3). He has been the sole breadwinner for the entirety of his marriage to Mrs. Gottlieb. (*See* ECF No. 433, pp. 5-6). His income funded the purchase of two properties in Key West and Fort Lauderdale, Florida, the sale of which allegedly funded the purchase of the Aventura Lakes Property approximately 10 years later. All of the available evidence shows that Mr. Gottlieb has been the primary contact and decision maker when it comes to the acquisition and disposition of the assets held by or for the benefit of him and his immediate family. (*See* ECF No. 433, pp. 5-6,

---

[2] On January 15, 2016, Mrs. Gottlieb filed her initial motion to release the Proceeds. (ECF Nos. 186-189).

18). On the other hand, Mrs. Gottlieb's involvement has only been on paper. (*See* ECF No. 433, p. 6). The evidence overwhelmingly shows that she was merely a signatory to help give effect to the decisions made by her husband in an attempt to shield his assets from creditors like the SEC.

Rather than refute these claims, Mrs. Gottlieb has chosen to ignore them. (*See generally* ECF No. 348). In response to the Commission's efforts to have Mr. Gottlieb's interest in the Proceeds turned over, she unsuccessfully doubled down on self-serving statements and claims that would have the Court believe that her name on the title to the Property nullifies the substantial evidence the Commission produced showing that Mr. Gottlieb has at least a fifty percent (50%) interest in the Proceeds. (*See generally* ECF No. 433).Now, she seeks reconsideration of the Court's Order with a Motion that is wholly absent of any controlling case law or facts that would support the relief she seeks. (*See generally* ECF No. 440-441).

### A. Mrs. Gottlieb's Motion fails to satisfy the strict standard required to obtain the "extraordinary remedy" of reconsideration.

Local Civil Rule 6.3 ("Local Rule 6.3") governs motions for reconsideration and seeks to "ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *SEC v. Ashbury Capital Partners, L.P.*, 2001 U.S. Dist. LEXIS 7094, *1 (S.D.N.Y. 2001) (quoting *Carolco Pictures, Inc. v. Sirota*, 700 F. Supp. 169, 170 (S.D.N.Y. 1988)). *See, also, In re Eur. Gov't Bonds Antitrust Litig.*, 2022 U.S. Dist. LEXIS 107942, at *8. A district court must '"narrowly construe and strictly apply' Local Civil Rule 6.3 to 'avoid duplicative rulings on previously considered issues' and to prevent the rule from being used to advance theories not previously argued or as 'a substitute for appealing a final judgment.'" *Id.* at *8 (quoting *Montanile v. Nat'l Broad. Co.*, 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002)). *See also Schwartz v. HSBC Bank USA, N.A.*, 2017 U.S. Dist. LEXIS 94019 at *5 (S.D.N.Y. 2017) (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d

36, 52 (2d Cir. 2012) (stating that "a motion for reconsideration is governed by a 'strict' standard and is generally denied 'unless the moving party can point to controlling decisions or data that the court overlooked.'").

The decision to grant or deny a motion for reconsideration rests within "the sound discretion of the district court." *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009) (citations omitted). Reconsideration is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000). In the Second Circuit, motions to reconsider are generally denied "unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Nakshin v. Holder*, 360 F. App'x 192, 193 (2d Cir. 2010). *See also Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quotations omitted).[3] "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *In re Eur. Gov't Bonds Antitrust Litig.*, 2022 U.S. Dist. LEXIS 107942 at *9 (quoting *Shrader*, 70 F.3d at 257). *See also, Analytical Surveys, Inc.*, 684 F.3d at 52 (observing that reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple" (internal quotation marks omitted)).

---

[3] "The 'manifest injustice' standard is, by definition, 'deferential to district courts and provide[s] relief only in the proverbial rare case.'" *Corsair Special Situations Fund, L.P v. Nat'l Res.*, 595 F. App'x 40, 44 (2d Cir. 2014) (summary order) (quoting *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009))

However, in her Motion, rather than making the necessary showing, Mrs. Gottlieb second guesses and critiques the Court's thorough and reasoned decision.[4] The Motion fails to identify one controlling decision not previously considered by the Court that would warrant reconsideration of any aspect of the Order. Similarly, the Motion fails to identify any controlling facts that were misconstrued or overlooked. Instead, Mrs. Gottlieb mainly disagrees with the findings of fact and cases cited in the Order. As a result, Mrs. Gottlieb's Motion should be denied.

i.   **There are no grounds for reconsideration under which Mrs. Gottlieb's Motion can be granted.**

In support of her Motion, Mrs. Gottlieb does not allege that there was an intervening change of controlling law, that new evidence exists, or that some manifest injustice was perpetrated against her. *See, Virgin Atl. Airways, Ltd.*, 956 F.2d at 1255. Instead, it seems, she argues that the Court committed a clear error by: (1) not holding a jury trial, which she did not request in her Renewed Motion; and (2) overlooking controlling facts when it held that she is only a nominal owner of the Proceeds. *See Nakshin*, 360 F. App'x at 193. (*See also* ECF Nos. 319-325).

Under a clear error standard of review, "so long as there is a basis in the evidence for a challenged inference," the court will "not question whether a different inference was available or more likely." *See Humphreys v. New York City Health*, 2023 U.S. Dist. LEXIS 5222, *7 (S.D.N.Y. 2023) (citing *United States v. Freeman*, 443 F. App'x 664, 666 (2d Cir. 2011) (quoting *Siewe v. Gonzales*, 480 F.3d 160, 168 (2d Cir. 2007)). "An order is 'clearly erroneous' only when 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *EEOC v. Morgan Stanley & Co.*, 2002 U.S. Dist. LEXIS 11877, *2

---

[4] It is worth noting that the Motion, as filed, does not include the memorandum required under Local Rule 6.3 *See* Local Rule 6.3 (stating that "[t]here shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked.").

(S.D.N.Y. July 1, 2002) (citing *Thompson v. Keane*, 1996 U.S. Dist. LEXIS 6022, *1 (S.D.N.Y. May 6, 1996). *See, also, Procel v. United States Tr. (In re Procel)*, 467 B.R. 297, 301 (S.D.N.Y. 2012) (noting that a strong presumption in favor of a trial court's findings of fact exist if supported by substantial evidence).

Even if Mrs. Gottlieb's Motion could be construed to include any controlling case law or facts that were overlooked, it fails to show that the Court committed a clear error in its Order, or lacked a basis for the inferences made therein. *See Analytical Surveys, Inc.*, 684, F.3d at 52 (noting that reconsideration should be granted only if "the moving party can point to controlling decisions or data that the court overlooked."). *See also Humphreys*, 2023 U.S. Dist. LEXIS 5222 at *7 (stating that a court's reasoning will be upheld under a clear error standard of review so long as there is a basis in the evidence for challenged inference). Therefore, her Motion fails to meet the required legal standard.

### B. The Court did not clearly err in deciding Mrs. Gottlieb's Renewed Motion and the SEC's Counter Motion on the papers.

Despite the numerous references to a jury trial in Mrs. Gottlieb's various filings, she never requested a jury trial to determine the issues raised in her Renewed Motion. (*See* ECF No. 319). (*See also* ECF No. 426 (noting that Mrs. Gottlieb's Renewed Motion requested the release of funds "without need for a trial")). Rather, she argued that if the funds were not released pursuant to a dispositive motion then a jury trial would be required. (*See* ECF No. 324, p. 8) ("if the Court denies relief of <u>all</u> the funds now, a trial will become necessary on the homestead claims"); (*See* ECF No. 324, p. 15, n. 7) ("if the funds in the registry are not released pursuant to a dispositive motion, Mrs. Gottlieb will be entitled to a jury trial on all of her claims"). In its response, the SEC noted that the record in this matter was complete and a ruling on the pending dispositive motions, i.e., Mrs. Gottlieb's Renewed Motion and the Commission's Opposition and Counter Motion, could be made

on the papers. (*See* ECF No. 336). The Court ultimately decided that half of the funds should be released to the Commission without need for a hearing, and requested additional briefing regarding the disposition of the remaining half in the Court's Registry. (*See* ECF No. 433).

Because Mrs. Gottlieb cannot accept any portion of the Proceeds being turned over to the Commission, she now seeks another chance to achieve a different result by claiming the issues she submitted to the Court should have been heard by a jury. (*See* ECF Nos. 433-34). This is exactly the type of situation Local Rule 6.3 precludes. *See In re Eur. Gov't Bonds Antitrust Litig*., 2022 U.S. Dist. LEXIS 107942 at *9 (explaining that "a motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided."). Furthermore, Mrs. Gottlieb cites no controlling case law or overlooked facts that support a finding that not having a jury trial constituted a clear error by the Court. *Cf. Shrader*, 70 F.3d at 257 (granting the extraordinary relief of reconsideration when CSX presented the court with data that had not been previously considered, including "numerous statements" in the applicable statute's legislative history and rulings from additional circuit courts, that supported its position). As such, reconsideration of the Order should be denied.

### i.   NY Civil Practice Law and Rule ("CPLR") 5225 does not require a jury trial in this matter.

Despite Mrs. Gottlieb's continued assertions, neither CPLR 5225 nor its Practice Commentaries require a jury trial in the case of a creditor seeking to satisfy a debt from assets held by a third party like Mrs. Gottlieb. *See* CPLR 5225, Practice Commentaries C5225:6, Trial of Fact Issue; Jury. Indeed, the example she repeats in her various filings involves a judgment creditor who is owed money (e.g., the Commission), a judgment debtor who owes money (e.g., Mr. Gottlieb), and a garnishee who is holding money allegedly belonging to the judgment debtor (e.g., First American). (*See* ECF No. 441, p. 2). Mrs. Gottlieb's comparison of her situation to the

Practice Commentary example is flawed as she is not the creditor, debtor, or garnishee in this matter. Instead, she claims ownership of the Proceeds as a third party, making this situation more analogous to the case *First Small Business Inv. Corp. v. Zaretsky*. 46 Misc. 2d 328 (N.Y. Sup. Ct. 1965). In *Zaretsky*, the judgment creditor, First Small Business Investment Corporation ("FSBIC") sought to levy against stock owned by judgment debtor, Samuel Zaretsky, but whose record holder was his daughter, Sandra Nebrasky. *Zaretsky*, 46 Misc. 2d at 329. The *Zaretsky* court unequivocally held that the parties in the case were "not entitled as of right to a jury trial." *Zaretsky*, 46 Misc. 2d at 331 (referring questions of fact regarding FSBIC's claim to a referee for a report and recommendation).

Mrs. Gottlieb neither requested nor was she entitled to a jury trial in connection with her Renewed Motion under CPLR 5225 or any other legal precedent. Moreover, she failed to identify any case law or facts that were overlooked by the Court that would require a jury trial in her case. *See Humphreys*, 2023 U.S. Dist. LEXIS 5222 at *7 (noting that a court's determination will not be challenged under a clear error standard "so long as there is a basis in the evidence for a challenged inference"). As a result, Mrs. Gottlieb's claim that the Order should be reconsidered because a jury did not render a verdict in connection with her Renewed Motion should be denied. *See In re Procel*, 467 B.R. at 301 (citing *Travellers Int'l A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1574 (2d Cir. 1994) (stating that "a reviewing court will not upset a factual finding 'unless [it is] left with the definite and firm conviction that a mistake has been made.'").

### ii.   Mrs. Gottlieb has no Seventh Amendment right to a jury trial in this matter.

In the alternative, Mrs. Gottlieb mentions, in passing, that her Seventh Amendment right to a jury trial was violated without providing any supporting case law or facts for consideration. (ECF No. 441, p. 5). Even if this reference could be construed as meeting the burden of a party

moving for reconsideration under Local Rule 6.3, Mrs. Gottlieb's claim must still fail because, in this case, the Court's equitable powers have been invoked. *See Nakshin v. Holder*, 360 F. App'x at 193 (explaining that motions to reconsider are generally denied in the Second Circuit "unless the moving party can point to controlling decisions or data that the court overlooked").

The Seventh Amendment provides that "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ." U.S. Const. Amend. VII. *See United States v. Accolade Constr. Grp. Inc*., 2017 U.S. Dist. LEXIS 79228, *2 (S.D.N.Y. 2017). Contrary to Mrs. Gottlieb's assertions, however, the Seventh Amendment only protects the fundamental right to a jury trial for actions at law, not actions in equity. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989); *Soley v. Wasserman*, 2013 U.S. Dist. LEXIS 55799, *1 (S.D.N.Y. 2013); *Maersk, Inc. v. Neewra, Inc.*, 687 F. Supp. 2d 300, 338 (S.D.N.Y. 2009). In this case, the Commission seeks to partially satisfy Mr. Gottlieb's disgorgement obligation with his interest in the Proceeds. These proceedings are thus distinctly equitable in nature. *SEC v. First Jersey Securities, Inc.,* 101 F.3d 1450, 1474 (2d Cir. 1996) (holding that "[o]nce the district court has found federal securities law violations, it has broad equitable power to fashion appropriate remedies."). *See, also, SEC v. Cavanagh*, 445 F.3d 105, 117 (2d Cir. 2006) (stating that "[t]he emphasis [of disgorgement] on public protection, as opposed to simple compensatory relief, illustrates the equitable nature of the remedy."). *See, e.g., Accolade Constr. Grp. Inc*., 2017 U.S. Dist. LEXIS 79228 at*4 (noting that "although disgorgement of profits under the TSCA involves the payment of money, it is nevertheless equitable in nature.").

Because the Seventh Amendment does not guarantee Mrs. Gottlieb a jury trial in this instance, and because she failed to cite any case law or other legal support to show otherwise, her reference to the Seventh Amendment should be disregarded.

### iii.   Releasing half of the Proceeds without a "full evidentiary hearing" did not violate any due process rights under the Fifth Amendment.

After years of motions practice on the issue of the Proceeds before this Court, Mrs. Gottlieb now seems to argue, without any legal support or further discussion, that the Court violated her due process rights under the Fifth Amendment by "reject[ing]" all or part of her testimony when making its decision to release half of the Proceeds to the Commission without first having a "full evidentiary hearing". (ECF No. 441, p.7-8). *See* U.S. Const. Amend. V. (stating that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."). The Fifth Amendment, however, does not require a hearing in order to afford individuals with due process under the law. In fact, "the Supreme Court held that the Due Process Clause of the Fifth Amendment can be satisfied without a hearing, so long as there is sufficient written notice and written procedures in place that one can avail before being deprived of life, liberty, or property." *Martinez v. McAleenan*, 385 F. Supp. 3d 349, 363 (S.D.N.Y. 2019) (citing *Mathews v. Eldridge*, 424 U.S. 319, 349 (holding that, under Due Process Clause of the Fifth Amendment, an evidentiary hearing was not required for the government to terminate disability benefits because the written process and procedures available comported with constitutional due process requirements)). *See Dixon v. Blackensee*, 2019 U.S. Dist. LEXIS 97958, *25, n.2 (S.D.N.Y. 2019) (noting that prisoners do not have an unequivocal right to a civil hearing under the Due Process Clause of the Fifth Amendment). *See also, Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) (stating that "[t]he fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner.")

Mrs. Gottlieb's claim that her due process rights were violated is incongruous with the facts of this case. Over the course of the past seven years, Mrs. Gottlieb has filed, through opposing counsel, countless motions, memoranda, and other documents in connection with her claimed

interest in the Proceeds. *See, e.g.,* ECF Nos. 186-189, 319-325, 440-441). She also had the opportunity to give testimony at her deposition, although she opted to do so via interrogatories instead.[5] Despite her many arguments and filings before the Court, Mrs. Gottlieb remains unable to cite one overlooked controlling decision or piece of information that supports her claimed right to a hearing. *See Nakshin v. Holder*, 360 F. App'x at 193 (explaining that motions to reconsider are generally denied in the Second Circuit "unless the moving party can point to controlling decisions or data that the court overlooked"). As such, Mrs. Gottlieb's Fifth Amendment claim should be disregarded and her Motion denied.

### C. The Court did not clearly err in holding that Mrs. Gottlieb is a nominal owner of the Proceeds.

The Court correctly determined that Mrs. Gottlieb was a nominal owner of the Proceeds based on both: (1) the Cavanagh Test; and (2) the doctrine of equitable ownership. Although she attempts to distinguish herself from the third parties highlighted in the cases cited by the Court, Mrs. Gottlieb misconstrues the law by suggesting a third party must knowingly accept ill-gotten gains to be determined a nominal owner. Furthermore, none of the alleged "disputed" facts she references were controlling in the Court's decision. In the end, Mrs. Gottlieb's Motion completely lacks any legal basis for her claim that the Court should reconsider its determination that she is a nominal owner of the Proceeds or, in the alternative, that Mr. Gottlieb is the equitable owner of at least half of the Proceeds.

---

[5] Due to the Covid-19 pandemic and technological concerns on behalf of Mr. and Mrs. Gottlieb, the parties agreed to conduct discovery through interrogatories rather than depositions.

i.   **Mrs. Gottlieb offered no controlling case law or overlooked facts that would warrant reconsideration of the Court's decision to turn over at least half of the Proceeds to the Commission under the Cavanagh Test.**

It is well established that a federal court may order equitable relief against a non-party in federal securities actions if that person: "(1) has received ill-gotten funds; and (2) does not have a legitimate claim to those funds."[6] *SEC v. AIC, Inc.*, 2013 U.S. Dist. LEXIS 130249, *54 (E.D. Tenn. 2013) (citing *SEC v. George*, 426 F.3d 786, 798 (6th Cir. 2005) (quoting *SEC v. Cavanagh*, 155 F.3d 129, 136 (2d. Cir. 1998))). "[A]mple authority supports the proposition that broad equitable powers of the federal courts can be employed to recover ill gotten gains for the benefit of victims of wrongdoing, whether held by the original wrongdoer or by one who has received the proceeds after the wrong." *SEC v. Colello*, 139 F.3d 674, 676 (9th Cir. 1998). *See SEC v. Rosenthal*, 426 Fed. Appx. 1, 3-4 (2d Cir. 2011) (holding that even a person's status as a limited partner will not shield his or her legitimate partnership distributions from disgorgement when such funds have been commingled with ill-gotten funds); *CFTC v. Walsh*, 618 F.3d 218, 226 (2d Cir. 2010) (holding that receiving property as a gift, without consideration, will not create a legitimate claim to avoid disgorgement); *CFTC v. Foreign Fund*, 2008 U.S. Dist. LEXIS 10667 *3 (M.D. Tenn. 2008) (stating that a federal court "may utilize the full range of its equitable powers to fashion an adequate equitable remedy, including orders that persons named as relief defendants return funds they received from the illegal conduct at issue"); *SEC v. Cavanagh*, 155 F.3d at 136 (2d Cir. 1998) (affirming the district court's grant of a preliminary injunction that froze stock proceeds deposited into the bank account of the defendant's wife, who was not a party to the litigation). *See also, Walsh*, 618 F.3d at 226 n.4 (noting that funds need not be traced to the proceeds of a fraudulent scheme to be subject to disgorgement). Although many cases involve

---

[6] This two-prong test is referred to as the "Cavanaugh Test."

transfers of ill-gotten gains where both a defendant and third party knowingly transfer or accept tainted assets, the Cavanagh Test does not include an intent requirement to justify the recovery of ill-gotten gains. (*See* ECF No. 433, p. 16, n. 3).

In finding that ill-gotten gains were received by Mrs. Gottlieb, the Court considered the following undisputed facts: (1) Mr. Gottlieb has been the sole income earner for his family since he and Mrs. Gottlieb married in 1974; (2) Mr. Gottlieb wrote all of the checks and, generally, handled all money matters for the family; (3) Mrs. Gottlieb never worked outside of the home and, until present, had not been the beneficiary of any inheritance; (4) starting in 1993, Mr. Gottlieb defrauded multiple individuals; and (5) in 1994, after or during the 1993 fraud, Mr. Gottlieb transferred his interest in the two properties that funded the Aventura Property purchase to Mrs. Gottlieb for $10 consideration each (a total of $20). (*See* ECF No. 433, pp. 5-6, 13-15). These findings of fact are sufficient to conclude that Mr. Gottlieb's transfer of his interest in the two quitclaimed properties to Mrs. Gottlieb in 1994, constituted the transfer of property tainted with ill-gotten gains. *See SEC v. Rosenthal*, 426 F. App'x at 3 (affirming disgorgement order as to third parties and declining to impose a "tracing requirement" that would allow defendants "to escape disgorgement by spending down illicit gains while protecting legitimately obtained assets" because "[d]enying disgorgement in such a situation . . . would be inconsistent with disgorgement's purpose to prevent unjust enrichment") (internal citation and quotation omitted); *Walsh*, 618 F.3d at 226 n.4  (noting that funds need not be traced to the proceeds of a fraudulent scheme to be subject to disgorgement). *SEC v. Byers*, 2009 WL 33434, *3 (S.D.N.Y. 2009) (Chin, J.) (recognizing the challenges of tracing specific funds to illegal activity and stating that defendants should not benefit from commingling their ill-gotten gains with other assets).

The second part of the Cavanagh Test requires a finding that the third party had no legitimate claim to the property. *See Cavanagh*, 155 F.3d at 137 (highlighting that while there are no explicit guidelines as to what constitutes a legitimate claim, it is well-established that no legitimate claim exists for property received as a gift without consideration). *See also, Walsh*, 618 F.3d at 226 (holding that a spouse "d[oes] not have a legitimate claim to [illegally obtained] property" via the marital estate "while she [i]s married to" a defendant). Here, Mr. Gottlieb quitclaimed his interest in two Florida properties, which the Court found were tainted with ill-gotten gains, to Mrs. Gottlieb in 1994 for a recited consideration of ten dollars each. (*See* ECF No. 320, ¶¶ 19-21). The sale of these properties allowed Mr. and Mrs. Gottlieb to purchase the Property, which when sold, yielded the Proceeds currently at issue. (*See* ECF No. 433, p, 4). This means that for a mere $20, Mr. Gottlieb transferred his interest in property that had a future value of nearly $800,000. No argument is made that Mrs. Gottlieb exchanged adequate consideration for the properties, and none could be made. (*See* ECF No. 441-1, ¶ 28). Mr. Gottlieb, therefore, gifted his interest in the properties, of at least fifty percent (50%), to Mrs. Gottlieb. *See Walsh*, 618 F.3d at 226 (holding that receiving property as a gift, without consideration, will not create a legitimate claim to avoid disgorgement). Under the Cavanagh Test this means that she had no legitimate right to at least half of the value of each quitclaimed property Mr. Gottlieb transferred, the Property purchased by selling those properties, and the resulting Proceeds when the Property was sold.

While Mrs. Gottlieb disagrees with the Court's findings under the Cavanagh Test, she notably fails to cite any controlling case law or overlooked facts that would warrant reconsideration. *See Nakshin*, 360 F. App'x at 193 (explaining that motions to reconsider are generally denied in the Second Circuit "unless the moving party can point to controlling decisions or data that the court overlooked"). Instead, she focuses her argument on her claim that the transfer

of property was for innocuous purposes. (*See* ECF No. 441, pp. 5-7). This, she argues, distinguishes her situation from the third parties discussed in the cases cited by the Court. The purpose of the transfer, however, is not a factor to consider in the Cavanagh Test, and is not relevant to the Court's inquiry. Even accepting her characterization of the intent behind the transfers cannot shield her from the relief ordered by the Court. The Motion should be denied as it provides no basis to reconsider the finding that Mrs. Gottlieb is a nominal owner of at least half of the Proceeds.

ii. **Mrs. Gottlieb offered no controlling case law or overlooked facts that would warrant reconsideration of the Court's finding that Mr. Gottlieb is the equitable owner of the Proceeds.**

The Court found, in the alternative, that Mr. Gottlieb is an equitable owner of the Proceeds, which makes his interest in the funds reachable by the Court to enforce its order for disgorgement. (*See* ECF No. 433, p. 18). "Equitable ownership is established when 'an individual exercises considerable authority over the assets, acting as though the assets are theirs alone to manage and distribute.'" (ECF No. 433, p. 11) (citing *SEC v. Smith*, 646 F. App'x 42, 43 (2d Cir. 2016) (holding that the defendant was a joint owner of stock in his wife's name when the defendant unilaterally traded in the account, he paid assets into the account, and benefitted from it by using its funds). Factors to consider when determining if a defendant is an equitable owner of property held by a third party are: (1) the length of time the asset had been held; (2) whether the defendant had an interest in and benefitted from the asset; (3) whether the defendant had transferred assets from his name into the asset; (4) whether the defendant contributed to acquire the asset initially; and (5) whether the defendant ever withdrew any funds from the asset. *See SEC v. McGinn, Smith & Co.*, 98 F. Supp. 3d 506, 522 (N.Y.S.D. 2015). If a defendant is found to be the equitable owner of the asset, the burden shifts to the third party asserting ownership to present evidence showing that the

third party did in fact own and control the asset. *SEC v. Ahmed*, 343 F. Supp. 3d 16, 31-32 (D. Conn. 2018) (citing *SEC v. I-Cubed Domains*, 664 F. App'x. 53, 56-57 (2d Cir. 2016).

Here, it is without question that Mr. Gottlieb's business endeavors were the sole source of funds used to purchase the homes in which he and his family lived, including the Aventura Lakes Property. (*See* ECF No. 433, pp. 13-14). In addition to his financial contributions, the Commission submitted unrefuted evidence that showed that Mr. Gottlieb was the primary contact for questions and decisions regarding the acquisition of the Property, as well as the eventual sale to the Cohens in 2015. (*See* ECF No. 433, pp. 18-20). Mrs. Gottlieb, on the other hand, has never held employment outside of the home or done little more than sign the documents relating to the Property, in addition to living in it and caring for her and her family. (*See* ECF No. 433, p. 5; ECF No. 330). The Commission provided substantial evidence that supported the Court's finding that Mr. Gottlieb is the equitable owner of the Proceeds. (*See* ECF No. 433, pp. 18-22).

In order to be granted reconsideration, Mrs. Gottlieb was required to identify controlling case law or facts that were overlooked by the Court when deciding Mr. Gottlieb is an equitable owner of the Proceeds. Instead, she reiterated the same arguments that already proved to be unpersuasive to the Court. (*See* ECF No. 351, p. 8). That the Court reached a different determination than Mrs. Gottlieb hoped is an insufficient basis for granting the extraordinary remedy she seeks. *See Humphreys*, 2023 U.S. Dist. LEXIS 5222 at *7 (noting that a court's determination will not be challenged under a clear error standard "so long as there is a basis in the evidence for a challenged inference"). *See also In re Eur. Gov't Bonds Antitrust Litig.*, 2022 U.S. Dist. LEXIS 107942 at *8 (explaining that Local Rule 6.3 should not be used as "a substitute for appealing a final judgment"). Therefore, Mrs. Gottlieb's Motion should be denied. *See Nakshin*, 360 F. App'x at 193 (explaining that motions to reconsider are generally denied in the Second

Circuit "unless the moving party can point to controlling decisions or data that the court overlooked").

### D. Mrs. Gottlieb's Declaration Adds No Support to Her Motion and Should Be Disregarded.

Mrs. Gottlieb's Motion and declaration ("Phyllis Gottlieb Declaration") constitute the quintessential "kitchen sink" argument, complete with repetitive claims, baseless accusations, and unfounded opinions, most or all of which have been made over the course of more than seven years. (*See e.g.,* ECF No. 441-1, pp. 60-64). She simultaneously commends Mr. Gottlieb for providing financially for their family and argues that there is no proof that he has earned any money since 1994. (*See* ECF No. 441-1, ¶¶ 23, 82). She alleges that she has contributed to the building of wealth for their family, but neglects to include information on any income she ever received. (*See* ECF No. 441-1, ¶ 57). And, instead of providing applicable case law or relevant facts to support her Motion, she repeats the same Florida tenancy by the entireties and homestead law arguments she believes should have safeguarded the Property and resulting Proceeds.[7] (*See generally* ECF No. 441-1). The Phyllis Gottlieb Declaration, at best, adds nothing to her Motion and, at worst, confuses her arguments and undermines her credibility, so much as to further impair a pleading already lacking in merit. It makes clear that the Motion is just an attempt to get a different outcome without any supporting legal arguments or evidence. *See, also, Ashbury Capital Partners, L.P.,* 2001 U.S. Dist. LEXIS 7094 at *1 (stating that Local Rule 6.3 "seeks to… 'prevent the practice of

---

[7] No matter how many times she repeats this, however, the law remains in favor of the Commission's position that a district court may disregard state law exemptions in situations where the Commission seeks to enforce an order of disgorgement. *See SEC v. Aragon Capital Advisors, LLC,* 2001 U.S. Dist. LEXIS 82531 *20-25 (S.D.N.Y. 2011) (ordering the defendant to turn over funds in his IRA accounts despite any claimed state law protections). Furthermore, neither the homestead exemption nor tenancy by the entireties would operate as protection against Mr. Gottlieb's interest in the Proceeds. (*See* ECF No. 330, p. 11-12) (noting that Property was not, and could never be, classified as tenants by the entireties property because there was never a unity of possession, interest or title to the Property between Mr. and Mrs. Gottlieb); (*See* ECF No. 330, p. 12-13) (showing that the Gottlieb's abandoned the Property as their homestead as early as 2014, and never returned with an intention to remain and use the Property as a homestead).

a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'"); *Analytical Surveys, Inc.*, 684 F.3d at 52 (observing that reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple") (internal quotation marks omitted). The Phyllis Gottlieb Declaration should, therefore, be disregarded and stricken from the docket.

### III.  CONCLUSION

Reconsideration is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Sys.,* 113 F. Supp. 2d at 614. "Generally, motions for reconsideration are not granted unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *In re BDC 56 LLC,* 330 F.3d 111, 123 (2d Cir. 2003) (quotation marks omitted). Moreover, a motion for reconsideration "is not favored and is properly granted only upon a showing of exceptional circumstances." *Marrero Pichardo v. Ashcroft,* 374 F.3d 46, 55 (2d Cir. 2004) (quotation marks omitted). Mrs. Gottlieb's Motion neither points to controlling decisions or data that this Court overlooked, nor did it make a showing of exceptional circumstances. As a result, and for all of the foregoing reasons, Phyllis Gottlieb's Letter Motion to Reopen ECF No. 433 to Grant Reconsideration of the Release of Funds to the Commission should be denied.

Dated: April 4, 2023
      Washington D.C.           Respectfully submitted,

/s/ Christy J. White
Christy J. White, pro hac vice
Securities and Exchange Commission
100 F Street NE, Mail Stop 5628
Washington, DC 20549
Tel: (202) 551-4502
Fax: (804) 708-6119

email: whitechr@sec.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 7, 2023, I electronically filed the United States Securities and Exchange Commission's Response in Opposition to Phyllis Gottlieb's Letter Motion to Reopen ECF No. 433 to Grant Reconsideration of the Release of Funds to the Commission using the CM/ECF system, which will send notification of such filing to the parties of record, and to Allen B. Gottlieb via email at <u>lawconsultancy@aol.com</u>.

/s/ Christy J. White

Christy J. White