UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

S.E.C.,

                    Plaintiff,                    98 Civ. 2636 (LAP)

-against-                                         MEMORANDUM & ORDER

Stewart, et al.,

                    Defendants.

LORETTA A. PRESKA, Senior United States District Judge:

     Mrs. Phyllis Gottlieb, a third party in these proceedings,
moves for reconsideration, (dkt. nos. 440-441, 446-48), of the
Court's Opinion and Order dated February 7, 2023 (the "February 7
Opinion"), (dkt. no. 433), granting the United States Securities
and Exchange Commission's ("SEC") countermotion for the release of
half of the sale proceeds of the Gottliebs' former home in
Aventura, Florida (the "Aventura Property").  Additionally, the
SEC moves to strike as untimely Mrs. Gottlieb's second amended
motion for reconsideration (the "Second Amended Motion"), (dkt.
nos. 446, 448), and her reply memorandum (the "Reply"), (dkt.
no. 447), or, in the alternative, to deny Mrs. Gottlieb's request
for a retroactive extension of the Reply filing deadline.  (See
Mot. to Strike ("Motion to Strike"), dated April 19, 2023 [dkt.
no. 450].)  For the reasons set forth below, Mrs. Gottlieb's motion
for reconsideration is DENIED, and the SEC's Motion to Strike is
GRANTED in part and DENIED in part.

I.    **Relevant Background**

The Court presumes familiarity with the lengthy history of these proceedings and, as such, recites only those facts pertinent to the immediate issues raised by Mrs. Gottlieb and the SEC. On April 12, 2021, Mrs. Gottlieb renewed her motion for an order directing that some or all of the proceeds of the sale of the Aventura Property be directed to the Phyllis J. Gottlieb Living Trust. (Dkt. nos. 319, 324.)  On May 4, 2021, the SEC opposed and moved in response to receive at least half of the sale proceeds. (Dkt. no. 330.)  On February 7, 2023, the Court entered its Opinion and Order denying Mrs. Gottlieb's renewed motion, granting the SEC's countermotion for half of the sale proceeds, and reserving judgment as to the remaining amount of sale proceeds pending further briefing by the parties.

On February 21, 2023, — the filing deadline for any motion to reconsider the Court's February 7 Opinion — counsel to Mrs. Gottlieb moved for an extension of time to file such a motion.[1]  Notwithstanding the tardiness of counsel's request for an extension of time, on February 23, 2023, the Court granted Mrs. Gottlieb a two-week extension to file her motion to reconsider

---

[1] Pursuant to this Court's Individual Practice 1.E., "[a]bsent an emergency, requests for . . . extensions of time shall be made at least **48 hours** prior to the scheduled deadline."  Counsel cited no such emergency and attributed his delay to foreseeable demands of trial preparation.

the February 7 Opinion. (Dkt. no. 435.)  On March 6, 2023, counsel
to Mrs. Gottlieb filed a second request for a further extension of
time until March 21, 2023.  (Dkt. no. 437.)  The Court granted
Mrs. Gottlieb the second requested extension as a final courtesy,
and the Court established a briefing schedule, pursuant to which
the SEC was to file its opposition by no later than April 4, 2023,
and Mrs. Gottlieb was to file any reply by no later than April 11,
2023.  (Scheduling Order ("March 7 Scheduling Order"), dated
March 7, 2023 [dkt. no. 439].)

On March 21, 2023, Mrs. Gottlieb filed a letter-motion seeking
reconsideration of the February 7 Opinion, (dkt. no. 440), which
she subsequently amended and refiled a day later, (Mot. for Recons.
("Motion for Reconsideration"), dated March 22, 2023 [dkt.
no. 441]).  The SEC timely filed its opposition brief on April 4,
2023, (Mem. Law in Opp'n to Mot. for Recons. ("Opposition Brief"),
dated April 4, 2021 [dkt. no. 443].)  In its Opposition Brief, the
SEC pointed out that Mrs. Gottlieb's Motion for Reconsideration
failed to meet the procedural requirements of Local Civil Rule 6.3.

On April 11, 2023, Mrs. Gottlieb's Reply filing deadline
lapsed, and Mrs. Gottlieb had neither filed a reply nor sought a
further extension of the deadline from this Court.  One week later,
on April 18, 2023, Mrs. Gottlieb not only filed her Reply, (dkt.
no. 447), but she also filed a Second Amended Motion that attempted

to cure the procedural shortcomings highlighted by the SEC's Opposition Brief, (see dkt. nos. 446, 448).

On April 19, 2023, the SEC moved to strike as untimely Mrs. Gottlieb's Second Amended Motion and the Reply or, in the alternative, to deny Mrs. Gottlieb's request for a retroactive extension of the Reply filing deadline.  (See generally Mot. to Strike.)  On April 24, 2023, Mrs. Gottlieb filed her opposition to the Motion to Strike, (dkt. no. 451), and the SEC filed its reply thereto on April 25, 2023, (dkt. no. 452).

## II. Motion to Strike

The Court first addresses the SEC's Motion to Strike.  For the following reasons, the Motion to Strike is GRANTED in part and DENIED in part.

### a. Legal Standard

Pursuant to Federal Rule of Civil Procedure ("Rule") 16(f), courts may impose sanctions for violations of their scheduling orders, including the sanction of "striking pleadings in whole or in part."  See Fed. R. Civ. P. 16(f)(1) ("[T]he court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order.").  Rule 16 "vests a district court with discretion to impose whichever sanction it feels is appropriate under the circumstances.  This sanctioning power accords with a district court's broader inherent power and

responsibility to manage its docket so as to achieve the orderly and expeditious disposition of cases." Huebner v. Midland Credit Mgmt., Inc., 897 F.3d 42, 53 (2d Cir. 2018) (quotation omitted). A court "need not find that the party acted in bad faith[;] [t]he fact that a pretrial order was violated is sufficient to allow some sanction." Id.

Thus, although "[s]trong public policy favors resolving disputes on the merits," Hidalgo v. New Ichiro Sushi, Inc., No. 15-cv-414 (AJN), 2017 WL 4712789, at *3 (S.D.N.Y. Sept. 27, 2017) (citation omitted), a district court ultimately retains "wide discretion" to determine if a motion to strike is appropriate, World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp., 694 F.3d 155, 159 (2d Cir. 2012) (citation omitted).

Additionally, Rule 6(b) permits courts to grant retroactive extensions of filing deadlines, for good cause, if the moving party "failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). "The resolution of a motion to strike and the determination of whether retroactive extension of a deadline is warranted are both equitable determinations that turn on evaluation of all of the relevant circumstances," and they are "routinely" assessed together. Hidalgo, 2017 WL 4712789, at *3-4.

When rendering a determination on a motion for retroactive extension, courts consider the following factors to determine if noncompliance was the result of "excusable neglect":

> (1) [t]he danger of prejudice to the [opposing party],
> (2) the length of the delay and its potential impact on
> judicial proceedings, (3) the reason for the delay,
> including whether it was in the reasonable control of
> the movant, and (4) whether the movant acted in good
> faith.

Id., at *4; see also Tancredi v. Metro. Life Ins. Co., 378 F.3d
220, 228 (2d Cir. 2004) (discussing the "excusable neglect"
standard).

   **b. Discussion**

   Based on the factors at issue here, the Court strikes the
Second Amended Motion, (dkt. nos. 446, 448), but declines to strike
Mrs. Gottlieb's Reply, (dkt. no. 447).

       1. Mrs. Gottlieb's Second Amended Motion

   First, counsel to Mrs. Gottlieb has shown a pattern of
disregard for the formalities of motion practice (that is, filing
deadlines, page limitations, and other general requirements set
out in the Local Civil Rules, the Court's Individual Practices,
and the Court's orders).  With respect to the instant motions,
counsel has ignored, for example, the Court's March 7 Scheduling
Order, Local Civil Rule 6.3 regarding the basic requirements of a
motion for reconsideration, Individual Practice 1.E regarding
extensions of time, and Individual Practice 2.C governing page
limitations.[2]  While each of these missteps is perhaps benign on

---

[2] With respect to page limitations, specifically, not only does
counsel disobey Individual Practice 2.C with the length of
Mrs. Gottlieb's Reply, but he further violates this Individual

its own, taken as a whole, they display an indifference to the rules of practice.

Second, it is notable that counsel filed Mrs. Gottlieb's Second Amended Motion two weeks after the SEC had alerted him to the procedural requirements of Local Civil Rule 6.3.  Despite counsel's attempt now to define these changes as "technical[]" amendments, (see dkt. no. 451 at 1), Mrs. Gottlieb clearly filed her Second Amended Motion in direct response to the points raised by the SEC's Opposition Brief.  Counsel copied the contents of Mrs. Gottlieb's Motion for Reconsideration into a new document and reformatted it in an attempt to comply with Local Civil Rule 6.3. Moreover, counsel filed the Second Amended Motion alongside the Reply, in which he specifically responded to the SEC's points regarding noncompliance with Local Civil Rule 6.3.  (See Reply at 2.)  It is therefore obvious that counsel read the SEC's Opposition Brief, realized that he had erred, and then sought to cure his error based on the SEC's reading of the Local Civil Rules.

Principles of equity thus support striking the Second Amended Motion.  Mrs. Gottlieb, or rather her counsel, should not be

---

Practice by attempting to shoehorn into the Motion for Reconsideration and the Reply dozens of pages of additional legal arguments appended thereto as Mrs. Gottlieb's declarations. Counsel's request that the Court "consider [them] in connection with this reconsideration motion," (see Mot. for Recons. at 8), effectively amounts to an improper request to exceed the page limitations.

permitted to capitalize on the SEC's arguments to salvage an otherwise improperly pleaded motion. Moreover, as the Second Amended Motion is a copy and paste of the Motion for Reconsideration, striking the former would not prevent the Court from reviewing the underlying merits of the Motion for Reconsideration. Accordingly, the SEC's request to strike the Second Amended Motion filed at docket entries 446 and 448 is GRANTED.

        2. <u>Mrs. Gottlieb's Reply</u>

Additionally, counsel filed Mrs. Gottlieb's Reply one week after the expiration of the Reply filing deadline. Counsel to Mrs. Gottlieb asked the Court to "accept this late submission" notwithstanding "counsel's inability to file [Mrs. Gottlieb's] [R]eply before now." The Court construes this footnote 1 of the Reply as counsel's request for a retroactive extension of the Reply filing deadline.

Turning to the factors for a retroactive extension, the Court finds that counsel's delay amounts to "excusable neglect." As to the reason for the delay, counsel supplies that he "did not anticipate that there would be any need to file a reply." Reply at 2. This admission is puzzling. The Court's March 7 Scheduling Order established filing deadlines for the SEC's Opposition Brief and for Mrs. Gottlieb's Reply. The SEC almost certainly would have opposed any motion for reconsideration, which it since has,

prompting a question of whether counsel had initially planned not to reply. Regardless, counsel had notice of the Reply filing deadline for five weeks, which is ample time to organize one's schedule and work priorities. Counsel's failure to plan accordingly does not excuse his delay. Nor does it explain why counsel would have elected to disregard the briefing schedule in full instead of preventatively seeking a further extension.

Nevertheless, delay by one week did not impact any judicial proceedings, it minimally prejudiced the SEC, if at all, and there is no evidence that counsel was acting in bad faith. Further, there is a strong interest in resolving matters on the merits. Weighing all of these factors, the Court finds that the one week delay amounts to excusable neglect. Therefore, the Court declines to strike the Reply and instead grants counsel a retroactive extension of the Reply.

Mrs. Gottlieb and her counsel are advised that there will be no additional retroactive extensions absent extraordinary circumstances. Failure to comply with scheduling orders, or any other procedural rules set forth by this Court or in the Local

Civil Rules, could result in the Court striking future submissions
<u>sua</u> <u>sponte</u>.

## III. Motion for Reconsideration

Next, the Court turns to Mrs. Gottlieb's Motion for
Reconsideration.  (Dkt. no. 441.)  For the reasons stated below,
Mrs. Gottlieb's Motion for Reconsideration is DENIED.

### a. Legal Standard

Reconsideration is an "extraordinary remedy."  <u>In re Beacon</u>
<u>Assocs. Litig.</u>, 818 F. Supp. 2d 697, 701 (S.D.N.Y. 2011) (quoting
<u>In re Health Mgmt. Sys. Inc. Sec. Litig.</u>, 113 F. Supp. 2d 613, 614
(S.D.N.Y. 2000)).  A party moving for reconsideration must submit
(1) a notice of motion for reconsideration and (2) a "memorandum
setting forth concisely the matters or controlling decisions which
counsel believes the Court has overlooked."  Local Civil Rule 6.3.
Local Civil Rule 6.3 is to be "narrowly construed and strictly
applied so as to avoid repetitive arguments on issues that have
been considered fully by the Court."  <u>Dietrich v. Bauer</u>, 198 F.R.D.
397, 399 (S.D.N.Y. 2001).

Such motions "are properly granted only if there is a showing
of: (1) an intervening change in controlling law; (2) the
availability of new evidence; or (3) a need to correct a clear
error or prevent manifest injustice."  <u>Drapkin v. Mafco Consol.</u>
<u>Grp., Inc.</u>, 818 F. Supp. 2d 678, 696 (S.D.N.Y. 2011).  Thus, "to
be entitled to . . . reconsideration, the movant must demonstrate

that the [c]ourt overlooked controlling decisions or factual matters that were put before it on the underlying motion." Dietrich, 198 F.R.D. at 399.  The movant must also demonstrate that the controlling law or factual matters "might reasonably be expected to alter the court's decision." Montanile v. Nat'l Broad. Co., 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002).  "A motion for reconsideration may not be used to advance new facts, issues[,] or arguments not previously presented to the Court, **nor may it be used as a vehicle for relitigating issues already decided by the Court.**" Bennett v. Watson Wyatt & Co., 156 F. Supp. 2d 270, 271 (S.D.N.Y. 2001) (emphasis added).

Clear error exists only when a court, based on the entire evidence, "is left with the definite and firm conviction that a mistake has been committed." JPMorgan Chase Bank, N.A. v. Reifler, No. 11-cv-4016 (DAB), 2016 WL 10570981, at *2 (S.D.N.Y. July 14, 2016) (citation omitted).  Similarly, manifest injustice "is defined as an error committed by the trial court that is direct, obvious, and observable." Corpac v. Does, 10 F. Supp. 3d 349, 354 (E.D.N.Y. 2013) (quotation omitted); Westcon Grp., Inc. v. CCC Techs., Inc., 2023 WL 2058709, at *2 (S.D.N.Y. Feb. 16, 2023). The strict standard "provides relief only in the proverbial 'rare case,'" Corsair Special Situations Fund, L.P. v. Nat'l Res., 595 F. App'x 40, 44 (2d Cir. 2014) (cleaned up), and requires the proponent to "meet [a] high burden" Sigmon v. Goldman Sachs Mortg.

Co., No. 1:12-cv-03367 (ALC), 2019 WL 970943, at *4 (S.D.N.Y. Feb. 28, 2019). "Courts ordinarily have not defined precisely what constitutes clearly erroneous or manifest injustice for reconsideration purposes. At least one court has held though that reconsideration is not warranted unless the prior decision is 'dead wrong.'" Ogi Oceangate Transp. Co. v. RP Logistics Pvt. Ltd., 2007 U.S. Dist. LEXIS 74180, at *3 n.1 (S.D.N.Y. Oct. 4, 2007) (quoting Parts & Elec. Motors, Inc. v. Sterling Elec. Inc., 866 F.2d 228, 233 (7th Cir. 1988)).

### b. Discussion

First, as discussed above, Mrs. Gottlieb's Motion for Reconsideration does not meet the threshold requirements of Local Civil Rule 6.3. Mrs. Gottlieb did not serve a "memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked . . . . " Local Civil Rule 6.3. Nor, had the Second Amended Motion prevailed, would copying and pasting the contents of a letter-motion into a filing titled as a memorandum of law have cured the deficiencies. Accordingly, the Motion for Reconsideration is denied as procedurally improper.

Second, the Motion for Reconsideration fails on the merits. Nowhere in Mrs. Gottlieb's 88-page letter-motion or her 59-page Reply does she raise any intervening change in controlling law or new evidence not already considered by the Court. At best, she started to sketch out arguments that the Court clearly erred and

committed a manifest injustice.  That is, she argues that the
Court's "implicit finding" that she is a "nominal" owner of the
sale proceeds overlooked purportedly controlling facts, departed
from controlling case law, and violated her Fifth and Seventh
Amendment rights.  (See Mot. for Recons. at 2-3.)  For the reasons
explained below, the Motion for Reconsideration fails to set forth
a proper basis for reconsideration and is therefore denied.

For starters, despite her claims, Mrs. Gottlieb fails to
reference any controlling facts overlooked by the Court in its
February 7 Opinion.  Instead, she suggests that the Court
cherry-picked evidence from the record to make its "unsupported
finding," "simply ignor[ing]" Mrs. Gottlieb's sworn testimony
about the origin of funds used to purchase the Aventura Property.
(See id. at 4-5.)  Had the Court credited her sworn testimony,
Mrs. Gottlieb argues, "it would have completely insulated the sale
proceeds . . . and [she] would be entitled to all of them.  Yet
[she] never had the procedural opportunity to try to persuade [the
Court] to credit what she asserted."  (Id. at 5.)

Putting aside that Mrs. Gottlieb has zero basis for alleging
that the Court ignored evidence, her argument that the 1994
quitclaims were "for completely different and benevolent" reasons,

(id. at 4), is neither here nor there.  The motivation behind the transfers does not matter under the Cavanagh factors.[3]

Mrs. Gottlieb also argues that the 1994 quitclaims post-dated the Gottliebs' acquisition of the two quitclaimed properties. (Id.)  However, as the Court made clear in its February 7 Opinion, "[i]t is not necessary that the purchase of the Aventura Property be directly linked to Mr. Gottlieb's ill-gotten gains."  (Feb. 7 Op. at 14.)  Accordingly, that the transfers post-dated the Gottliebs' purchase of the two quitclaimed properties is also immaterial to the Court's determination that the SEC is entitled to half of the sale proceeds.

Despite Mrs. Gottlieb's assertions that these facts are "material" and, if credited, would have "completely insulated the sale proceeds," facts do not magically become material because one party wills them to be.  Mrs. Gottlieb cannot dress up her testimony as "controlling" through inappropriate speculation about the Court's internal processes and an enthusiastic use of adjectives.  The fact remains that Mr. Gottlieb has been the sole provider for their family since 1974.  Mrs. Gottlieb has never been independently employed or held outside employment, and she

---

[3] Counsel selectively quotes from the Court's February 7 Opinion how the Court was "deeply suspicious" that the transfers were innocent estate planning.  (See Mot. for Recons. at 4.)  Yet counsel omits the immediately preceding clause giving context to the sentence:  "Setting aside the fact that this is irrelevant under Cavanagh . . . . "  (Feb. 7 Op. at 17 n.3.)

did not inherit any assets or money.  In 1994, Mr. Gottlieb
quitclaimed his interest in the two properties to Mrs. Gottlieb
for just twenty dollars.  As the SEC has put it, "all roads lead
back to Mr. Gottlieb."[4]  (Opp'n Br. at 2).  As Mrs. Gottlieb offers
no new evidence for her claims, Mrs. Gottlieb's issue is, at its
core, dissatisfaction with an unfavorable ruling.

Second, Mrs. Gottlieb argues that "a review of the pertinent
case law does not support [the Court's] implicit 'nominal' finding
here."  (Mot. for Recons. at 3.)  She then revisits the same set
of cases cited by the Court in its February 7 Opinion, offering
her preferred interpretation of the relevant case law.  (See id.
at 5-6.)  Not only does Mrs. Gottlieb fail to cite any intervening
change of controlling law, but she fails to cite any new law at
all.  To the extent Mrs. Gottlieb believes that jotting down an
opposing read of the pertinent cases satisfies the standard for
reconsideration, she is sorely misguided.  Reconsideration is an
extraordinary remedy, not an invitation to "relitigat[e] issues
already decided by the Court."  See Bennett, 156 F. Supp. 2d
at 271.

---

[4] Mrs. Gottlieb's theory rests on a presumption that the Court
"start[ed] the analysis clock in 1993 . . . rather than 1986,"
which she purports led the Court to err.  (Mot. for Recons. at 4).
The Court is unfamiliar with the imaginary "clock" to which Mrs.
Gottlieb refers.  As the February 7 Opinion makes clear, the Court
examined the entire history of the Gottliebs' relationship
beginning with their marriage in 1974.  (See, e.g., Feb. 7 Op. at
5, 13).

Mrs. Gottlieb also makes passing reference to "her right to a jury trial under the [S]eventh [Amendment]," (Mot. for Recons. at 5), without offering any legal authority or facts in support thereof.  In the same breath, she returns to old arguments that she contends entitle her to a jury trial under the New York Civil Practice Law and Rules.  (See Reply Mem. of Law in Supp. of Mot. for Release of Funds, dated June 14, 2021 [dkt. no. 348]) (arguing the same).  The Court already ruled, in its February 7 Opinion, that "[t]he Court, and not a jury, will decide these issues in light of the overwhelming case law . . . in which district courts have used their equitable power in the context of securities enforcement actions to order the turnover of assets nominally held by third parties without a jury trial."  (Feb. 7 Op. at 23 n.4) (quotation omitted).  Mrs. Gottlieb, by contrast, has offered no case law to substantiate her requested departure from the vast body of case law.  She is likewise ineligible to invoke the Seventh Amendment as that right extends only to suits at common law, and the Court has exercised its equitable powers here.  See U.S. Const. Amend. VII.  This argument is therefore without merit.

Mrs. Gottlieb also argues that the Fifth Amendment "requires that she be given an opportunity to prove up her sworn factual assertions at an evidentiary proceeding."  (Reply at 9.)  Yet the two factual points that Mrs. Gottlieb raises in her Motion for Reconsideration (that is, the motivations and timing of the 1994

quitclaims) are immaterial to the Court's analysis and its rulings. As the SEC correctly observes, "Mrs. Gottlieb has filed . . . countless motions, memoranda, and other documents in connection with her claimed interest in the [sale p]roceeds," and she "remains unable to cite one overlooked controlling decision or piece of information that supports her claimed right to a hearing." (Opp'n Br. at 10-11.)  Mrs. Gottlieb has had ample opportunity to participate in these proceedings, and an evidentiary hearing at which to re-examine the same assertions will not alter the Court's ruling in any meaningful way.  Mrs. Gottlieb has therefore been afforded due process, and her request is denied.

Last, there are a variety of places where Mrs. Gottlieb seeks to revisit old arguments, such as the Florida homestead laws.[5]  The Court has addressed the inapplicability of Florida state law to this proceeding.[6]  Mrs. Gottlieb's inclination to continue beating

---

[5] For example, Mrs. Gottlieb, in a last-ditch effort, argues that "[t]he controlling decisions are those of the courts that have universally rejected the notion of invading an innocent spouses's [sic.] Florida homestead property to satisfy the other's obligations." (Reply at 4 n.2.)  Not surprisingly, Mrs. Gottlieb offers no support for this claim.

[6] The Court has explained, for example, (1) that it "has broad equitable authority to disregard state law where necessary to ensure the vitality of federal securities laws," (2) that "the enforcement of a federal court's disgorgement order may reach assets otherwise protected by state law," and (3) that "[t]his authority extends to orders for equitable relief against a third party if that third party has received ill-gotten funds or does not have a legitimate claim to those funds." (Feb. 7 Op. at 24.)

the drum of already-decided issues is, most charitably, unmeritorious.

## IV. Conclusion

What Mrs. Gottlieb wishes were true is irrelevant to whether this Court abused its discretion, much less whether the Court made a "clear" or "obvious" error. Accordingly, the SEC's Motion to Strike, (dkt. no. 450), is GRANTED in part and DENIED in part. Mrs. Gottlieb's Motion for Reconsideration, (dkt. no. 441), is DENIED. The Clerk of the Court is further directed to close docket entries 440, 446, and 448 in accordance with this Order.

The Court will set a briefing scheduling on the disposition of the remaining funds in the Court's Registry after it has rendered a decision on Mr. Eisemann's pending motion to withdraw as counsel to the Gottliebs.


**SO ORDERED.**

Dated:    New York, New York
          February 1, 2024

_Loretta A. Preska_
_____
LORETTA A. PRESKA
Senior United States District Judge